857 So.2d 257 (2003)
Edward GRAEF, Jr., as Personal Representative of the Estate of Edward Graef, deceased, Appellant,
v.
DAMES & MOORE GROUP, INC., f/k/a Dames & Moore, Inc., Appellee.
No. 2D02-3675.
District Court of Appeal of Florida, Second District.
September 10, 2003.
Rehearing Denied October 16, 2003.
*258 Todd R. McPharlin and Gregg A. Schlesinger of Sheldon J. Schlesinger, P.A., Fort Lauderdale, for Appellant.
Kimberly S. Mello and David B. Weinstein of Bales Weinstein, Tampa, for Appellee.
WALLACE, Judge.
Edward Graef, Jr., as personal representative of the estate of Edward Graef (Graef), appeals the trial court's final judgment awarding attorney's fees to defendant Dames & Moore Group, Inc. (Dames & Moore), pursuant to section 57.105(1), Florida Statutes (1993). Because Dames & Moore's motion for attorney's fees was not filed within a reasonable time after the trial court entered final summary judgment in Dames & Moore's favor, we reverse.

Standard of Review and Applicable Law
The unique circumstances of this case present mixed questions of law and fact. Accordingly, we review the trial court's final judgment awarding attorney's fees to Dames & Moore for legal error to the extent that it is based upon pure questions of law and for abuse of discretion to the extent that it is based upon an exercise of the trial court's discretion.[1] *259 Dames & Moore was required to move for section 57.105(1) attorney's fees within a "reasonable time" after entry of final judgment. See Stockman v. Downs, 573 So.2d 835, 838 (Fla.1991). Dames & Moore filed its motion before the effective date of Florida Rule of Civil Procedure 1.525, which established a thirty-day time limit for the filing of postjudgment motions for costs and attorney's fees. See Amendments to the Florida Rules of Civil Procedure, 773 So.2d 1098, 1099 (Fla.2000) (establishing January 1, 2001, as the effective date of the rule). Because the bright line of rule 1.525 does not apply to this case, our inquiry does not end by simply counting the days between the date of final judgment and the motion for attorney's fees. Indeed, measuring the length of the delay is merely the beginning of our inquiry into whether Dames & Moore timely filed its motion for attorney's fees under the facts of this case.

Measuring the Delay
The length of Dames & Moore's delay in filing its section 57.105(1) motion for attorney's fees is properly measured from the date the trial court entered an order on June 9, 1999, granting summary judgment in Dames & Moore's favor. In an earlier appeal, Dames & Moore questioned whether this order was a "final order" for the purpose of measuring when a motion for attorney's fees should be filed. It was settled as the law of the case, however, that the June 9, 1999, order on summary judgment was sufficiently final to constitute entry of final judgment for the purposes of subsequent litigation in both the trial and appellate courts. See Graef v. Hegedus, 827 So.2d 394, 395-96 (Fla. 2d DCA 2002) (reversing an award of attorney's fees to Dames & Moore based upon an offer of judgment because its motion for fees under section 768.79, Florida Statutes (1991), was filed more than thirty days after entry of final judgment). Thus June 9, 1999, marked the end of Graef's lawsuit and the beginning of postjudgment proceedings between these parties. On December 15, 2000, Dames & Moore filed a motion for attorney's fees pursuant to section 57.105(1) on the ground that Graef's complaint against Dames & Moore was frivolous and completely lacked a justiciable issue of law and fact.[2] Dames & *260 Moore filed this motion 555 days after entry of summary judgment on June 9, 1999.
Dames & Moore argues that June 6, 2000, should be considered as the starting date to measure the delay in the filing of its motion for attorney's fees pursuant to section 57.105(1). On that date, the trial court entered an order titled "Summary Final Judgment." This order purported to grant summary judgment in favor of Dames & Moore and specified that Graef would take nothing on his claim. It referred to the summary judgment order of June 9, 1999, and to this court's affirmance of that order. The June 6, 2000, judgment also reserved jurisdiction to the trial court to consider "any motions relating to attorneys' fees and costs." By contrast, the summary judgment order of June 9, 1999, did not contain such an express reservation of jurisdiction.
The trial court's express reservation of jurisdiction to consider attorney's fees on June 6, 2000, does not require the conclusion that the judgment of that date should prevail over the judgment of June 9, 1999, as the starting point to measure Dames & Moore's delay in filing a motion for attorney's fees. After June 9, 1999, in the absence of such an express reservation of jurisdiction, the trial court retained continuing jurisdiction to entertain a motion for attorney's fees as a collateral and independent claim if filed within a reasonable time, notwithstanding that the litigation of the main claim was concluded with finality. See Finkelstein v. N. Broward Hosp. Dist., 484 So.2d 1241, 1243 (Fla.1986). Dames & Moore did not need to wait for the trial court to expressly reserve the jurisdiction that it inherently retained after entry of final judgment.
Under different circumstances, if the trial court had expressly reserved jurisdiction to consider attorney's fees in the June 9, 1999, order, such a reservation may have been a factor in determining whether a postjudgment motion for attorney's fees was timely filed. In United States Fidelity & Guaranty v. Martin County, 669 So.2d 1065, 1068 (Fla. 4th DCA 1996), the prevailing party based its claim for attorney's fees in part on a contract that was the subject of the lawsuit. The prevailing party pleaded entitlement to attorney's fees at the outset of the litigation and reiterated its claim in the motion for summary judgment. The trial court reserved jurisdiction to determine attorney's fees when it granted summary judgment, and the losing party appealed. The prevailing party delayed filing a motion for attorney's fees until eight days after the appeal was final. Id. at 1066. In finding the motion timely, the court's chief concern was notice. Id. at 1067. The losing party was aware that liability for attorney's fees would result from its liability for breach of contract, and its liability on the contract would become final when the adverse summary judgment was affirmed.
In Martin County, the trial court reserved jurisdiction before the appeal was taken and contemporaneously with entering summary judgment. By contrast, in *261 this case, the trial court reserved jurisdiction one month after the appellate mandate issued on May 5, 2000, and nearly one year after it entered summary judgment on June 9, 1999. By June 6, 2000, the time had long passed for Graef to have received the sort of indirect notice described by Martin County of Dames & Moore's intent to seek attorney's fees under section 57.105(1) through the trial court's reservation of jurisdiction. Therefore, the time for Dames & Moore to file its section 57.105(1) motion for attorney's fees is properly measured from June 9, 1999.

Other Facts Relevant to Timeliness
On June 21, 2000, Dames & Moore filed a motion for attorney's fees based upon an offer of judgment pursuant to section 768.79. This motion did not include a claim for attorney's fees pursuant to section 57.105(1), and it was the subject of a separate final judgment and a separate appeal. See Graef, 827 So.2d 394. Dames & Moore served its section 57.105(1) motion for attorney's fees on Graef on Thursday, December 14, 2000, and filed it on December 15, 2000, shortly before a hearing on Monday, December 18, 2000. The subject of the hearing was Dames & Moore's section 768.79 motion for attorney's fees, but the section 57.105(1) motion was also discussed. Graef objected to the section 57.105(1) motion as untimely filed. The trial court continued consideration of the section 57.105(1) motion until a hearing on October 15, 2001. On December 7, 2001, the trial court entered a nonfinal order finding that Dames & Moore was entitled to attorney's fees pursuant to section 57.105, but this order did not include findings of fact or determine an amount. Finally, on July 5, 2002, the third circuit judge assigned to this case entered a final judgment awarding $14,212.50 in attorney's fees pursuant to section 57.105(1).[3] Neither the order on Dames & Moore's entitlement to attorney's fees nor the final judgment awarding attorney's fees addressed the timeliness of Dames & Moore's motion.

The Reasonableness of the Delay
Having determined that 555 daysapproximately 18½ monthswas the length of delay between entry of final judgment and Dames & Moore's filing of its motion for section 57.105(1) attorney's fees, we next consider whether such delay was reasonable under the circumstances of this case. Courts have identified several factors in determining reasonableness, including the danger of unfair surprise or prejudice to a party against whom fees are sought, the existence of special or extenuating circumstances justifying the delay, the pendency of an appeal, whether the policy underlying the requirement of reasonableness is served or offended, and the actual length of delay. No one factor is dispositive, and the weight assigned to any given factor depends on the circumstances of the case.
The question of whether a party may be unfairly surprised or prejudiced by a claim for attorney's fees under section *262 57.105 necessarily involves whether the claim is founded on an allegation of frivolousness under section 57.105(1) or a claim for prevailing party fees under section 57.105(2). Although both types of claims are collateral to the main litigation, a claim under section 57.105(2) must be pleaded before entry of final judgment so that the losing party is on notice that the prevailing party will seek such fees after the conclusion of the litigation. See Wunderle v. Fruits, Nuts & Bananas, Inc., 715 So.2d 325, 325-26 (Fla. 2d DCA 1998) (reversing an award of attorney's fees to the party that successfully sued for default on a promissory note that contained a provision for attorney's fees because the party did not plead attorney's fees before entry of final judgment and did not seek such fees until two months afterwards). By contrast, a claim under section 57.105(1) need not be pleaded before entry of final judgment. Indeed, our supreme court has advised that it is appropriate for a litigant to wait until the conclusion of litigation before filing a claim under section 57.105(1) to insure that such a claim is not precipitously filed. Ganz v. HZJ, Inc., 605 So.2d 871, 872 (Fla.1992). It is only after the case has been terminated that a sensible judgment can be made by a party as to whether the adverse party's action or defense was completely frivolous. Id. Thus, whether or not a claim for section 57.105(1) attorney's fees is pleaded before entry of final judgment, the losing party properly receives notice that it must prepare to defend a claim seeking such fees when the prevailing party files a motion after the conclusion of the main litigation.
In this case, although Dames & Moore raised the section 57.105(1) fee issue in its motion for summary judgment, it did not file a motion seeking such fees until 18½ months after entry of summary judgment in its favor. This delay subjected Graef to the danger of unfair surprise in two respects. First, after litigation had long been concluded and Dames & Moore had not moved for section 57.105(1) attorney's fees, Graef should have been able to assume safely that such fees were not being sought. See Nat'l Envtl. Prods., Ltd. v. Falls, 678 So.2d 869, 871 (Fla. 4th DCA 1996). This is particularly so when, six months previously, Dames & Moore inexplicably failed to include a claim for attorney's fees under section 57.105(1) when it first moved for attorney's fees based upon an offer of judgment. Although the losing party may be said to be on continual notice that attorney's fees may be awarded under section 57.105(1) within a reasonable time after entry of final judgment, such notice is not perpetual. The Fourth District has identified a nineteen-month postjudgment delay as beyond the boundary of reasonableness after which the losing party was unfairly surprised by the prevailing party's motion for attorney's fees under section 57.105(1). Id. at 871-72. Dames & Moore's 18½ month delay similarly falls outside the boundary of reasonableness.
Graef was also subjected to the danger of unfair surprise by the filing of Dames & Moore's section 57.105(1) motion shortly before a scheduled hearing on Dames & Moore's motion for attorney's fees based upon an offer of judgment. The trial court did not rule on the motion at the hearing; nevertheless, the 57.105(1) request was discussed at the hearing. Although the trial court's June 6, 2000, judgment generally reserved jurisdiction to consider motions for attorney's fees, this judgment cannot be said to have put Graef on notice that Dames & Moore would seek section 57.105(1) attorney's fees.
Although Graef was subjected to the danger of unfair surprise by Dames & Moore's section 57.105(1) motion for attorney's *263 fees, it is difficult for Graef to demonstrate that the delay resulted in prejudice. See Shipley v. Belleair Group, Inc., 759 So.2d 28, 30 (Fla. 2d DCA 2000) (stating in dictum that before the prevailing party is denied its ability to recover fees, "the losing party probably should be required to demonstrate some degree of prejudice" arising from the delay). Nevertheless, the patent unreasonableness of Dames & Moore's delay outweighs Graef's lack of demonstrated prejudice. In this respect, Shipley is instructive by contrary analogy.
In Shipley, a party successfully sued for default on a promissory note that provided for the costs of collection in the event of default, including attorney's fees. Id. at 29. The complaint expressly alleged a right to attorney's fees, and the trial court expressly reserved jurisdiction to consider attorney's fees when it entered final judgment awarding damages on the promissory note. The losing party did not pay the judgment when it was entered, and the prevailing party initiated collection proceedings. Eventually, the losing party paid the judgment in full, but this payment did not include an amount for the costs of collection or attorney's fees. The prevailing party then filed a motion to tax fees and costs eighty days after entry of final judgment. Id. In holding the delay reasonable, we emphasized that the losing party failed to show that it was prejudiced by the eighty-day delay, which was caused in large part by ongoing collection efforts. Under the circumstances, the prevailing party's delay was more appropriately measured from the conclusion of collection efforts, rather than entry of final judgment. Id. at 30. Thus the losing party could not reasonably complain that it was unfairly surprised or prejudiced by the motion to recover collection costs, including attorney's fees, because it was on notice from the inception of the litigation that it would be liable for such costs, even as it increased those costs by delaying payment of the final judgment.
By contrast, Dames & Moore's basis for seeking attorney's fees did not arise from a contract that was the subject of the litigation. Whether Graef's lawsuit was frivolous was a wholly collateral matter appropriately reserved for postjudgment proceedings. However, without any intervening event to indicate that Dames & Moore intended to seek attorney's fees on the ground that Graef's lawsuit was frivolous, Dames & Moore filed its section 57.105(1) motion 18½ months after entry of final judgment. Eighteen and one-half months is significantly longer than the eighty days during which the prevailing party in Shipley waited before seeking the costs of collection while it was incurring additional costs while attempting to collect. The factors indicative of reasonableness in Shipley are absent in this case.
Rather than Shipley, the closer case is Falls, 678 So.2d at 871. In Falls, the prevailing party sought attorney's fees on the ground that the losing party's lawsuit was frivolous, but the prevailing party delayed filing its motion until nineteen months after entry of final judgment and six months after the appellate court affirmed the judgment without opinion. The issue of section 57.105(1) fees was raised for the first time in a postjudgment motion, with apparently no intervening activity by the prevailing party to give notice that such fees would be sought. Id. at 870. The Fourth District observed that after such a lengthy delay, it would be incumbent upon the prevailing party to demonstrate special or extenuating circumstances for failing to file the motion previously. Id. at 871. The prevailing party in Falls did not demonstrate extenuating circumstances, and neither does Dames & Moore in this case.
*264 The pendency of an appeal from the judgment on the merits is another factor to be considered in assessing the reasonableness of the delay in the filing of a postjudgment motion for attorney's fees. Under different circumstances, it may be reasonable for a party to delay filing a motion for attorney's fees until the resolution of the appeal. See Martin County, 669 So.2d at 1067-68 (recognizing that litigants may want to avoid the time and expense of a lengthy attorney's fee hearing when the order on appeal has an arguable chance of being reversed, thus rendering the fee issue moot).
The Falls court, however, described "practical reasons" for a party to file the motion for attorney's fees promptly after judgment is entered instead of waiting until the conclusion of the appeal. Falls, 678 So.2d at 871. These practical reasons are applicable to this case. First, the trial court was in a better position to assess the issue of frivolousness promptly after the termination of the main action instead of nineteen months later. This is especially true where, as in this case, a new presiding judge was required to adjudicate the issue without the benefit of first-hand knowledge of the prior proceedings. Second, a prompt filing and determination of Dames & Moore's motion for attorney's fees would very likely have enabled this court to consider the issues raised on this appeal together with the appeal of the final summary judgment. This would have facilitated our consideration of both matters. It would also have made possible a more efficient use of judicial resources. Third, a prompt filing and determination of Dames & Moore's motion for attorney's fees may also have promoted a resolution of the case and made it unnecessary for Graef to pursue an appeal from the summary judgment or the judgment for attorney's fees. Finally, a prompt filing by Dames & Moore of its motion for attorney's fees would have avoided a further prolongation of this litigation, which has been pending since 1992. Taking all of the circumstances into consideration, it was not reasonable for Dames & Moore to delay the filing of its motion for attorney's fees until after the determination of the appeal from the summary judgment in its favor.
It is entirely possible that the trial court could have benefitted from our consideration of the merits of the summary judgment in its determination of Dames & Moore's motion for attorney's fees. This factor, considered in isolation, tends to make waiting to file the motion for attorney's fees until after the determination of the appeal seem more, rather than less, reasonable. In Bal Bay Realty, Ltd. v. Pepsomers Corp., 833 So.2d 320, 323 (Fla. 4th DCA 2003) (en banc), the Fourth District recognized that the time during the pendency of the appeal could be a factor in determining the timeliness of a motion for attorney's fees. However, the Fourth District held that the trial court abused its discretion in finding reasonable a delay of eight months from the issuance of the appellate court's mandate to the filing of the motion for attorney's fees. Id. at 324. In this case, our mandate affirming the June 9, 1999, summary judgment in Dames & Moore's favor issued on May 5, 2000. Graef v. Dames & Moore, Inc., 758 So.2d 677 (Fla. 2d DCA 2000) (table decision). Dames & Moore delayed 224 daysapproximately 71/3 monthsfrom the issuance of our mandate to the filing of its motion for attorney's fees on December 15, 2000. Even if one views the pendency of the appeal as making the delay prior to the conclusion of the appeal reasonable, the delay after the conclusion of the appeal was not reasonable. See Bal Bay Realty, 833 So.2d 320; Falls, 678 So.2d 869.
*265 The purpose of section 57.105(1) is to dissuade litigants and attorneys from pursuing baseless claims, stonewall defenses, and sham appeals in civil litigation by placing a price tag on losing parties who engage in these activities. State, Dep't of Highway Safety & Motor Vehicles v. Salter, 710 So.2d 1039, 1041 (Fla. 2d DCA 1998). Requiring motions under section 57.105(1) to be filed within a reasonable time after entry of final judgment preserves the statute's purpose by curbing needless prolongation of the litigation. Dames & Moore's lengthy delay served neither the purpose of section 57.105(1) nor the requirement of filing a postjudgment motion for attorney's fees within a reasonable time.
Accordingly, the final judgment for attorney's fees is reversed.
FULMER and SILBERMAN, JJ., Concur.
NOTES
[1] In considering a trial court's determination of the timeliness of a postjudgment motion for attorney's fees, few appellate courts have expressly articulated the standard of review guiding their analyses. In reviewing a judgment granting attorney's fees, the Fourth District clearly applied an abuse of discretion standard to the trial court's ruling that the motion was timely. Bal Bay Realty, Ltd. v. Pepsomers Corp., 833 So.2d 320, 324 (Fla. 4th DCA 2003) (en banc). The case was factually complex but did not appear to involve the sort of pure questions of law presented by this case, questions such as the legal effect of the trial court's prior judgments and the interpretation of prior appeals. On the other hand, in reviewing an order striking a motion for attorney's fees as untimely, we reversed because the delay was "not unreasonable as a matter of law." Shipley v. Belleair Group, Inc., 759 So.2d 28, 30 (Fla. 2d DCA 2000); see also U.S. Fid. & Guar. v. Martin County, 669 So.2d 1065, 1067-68 (Fla. 4th DCA 1996) (appearing to review de novo a trial court's denial of a motion for attorney's fees as untimely filed). Thus the relevant standard of review appears to depend in part on whether the trial court granted the motion for attorney's fees or denied it as untimely. If the trial court awarded fees and found expressly or implicitly that the motion was timely, review should be for abuse of discretion to determine whether the trial court erred by finding the filing timely under the circumstances. If the trial court denied a motion for attorney's fees as untimely, review should be de novo to determine whether the delay was not unreasonable as a matter of law. This distinction preserves the trial court's discretion over questions to which "no strict rule of law is applicable, but which, from their nature, and the circumstances of the case, are controlled by the personal judgment of the court," Canakaris v. Canakaris, 382 So.2d 1197, 1202 (Fla.1980); at the same time, the distinction recognizes that the trial court should not cause a prevailing party to be "entirely stripped of its ability to recover fees" when the prevailing party's delay in filing the motion was not unreasonable as a matter of law, Shipley, 759 So.2d at 30. In this case, the trial court granted attorney's fees, but the issue of whether the delay in filing the motion was reasonable under the circumstances also involved pure questions of law; thus a mixed standard should apply.
[2] Dames & Moore designated this filing as an "amendment" to its previously filed motion for attorney's fees based upon an offer of judgment pursuant to section 768.79.

The parties stipulated that Dames & Moore's motion was governed by a former version of section 57.105(1). In 1999, the statute was substantively amended to require an award of attorney's fees when the losing party
knew or should have known that a claim or defense when initially presented to the court or at any time before trial: (a) Was not supported by the material facts necessary to establish the claim or defense; or (b) Would not be supported by the application of then-existing law to those material facts.
Ch. 99-225, § 4, at 1406, Laws of Fla.; Gahn v. Holiday Prop. Bond, Ltd., 826 So.2d 423, 426 (Fla. 2d DCA 2002). The 1999 amendment, which does not apply in this case, effected a substantive change in the standard under which section 57.105(1) attorney's fees are to be awarded. See Forum v. Boca Burger, Inc., 788 So.2d 1055, 1060-61 (Fla. 4th DCA 2001).
[3] The ten-year duration of the litigation twice necessitated the replacement of the presiding trial court judge. In 1992, Graef sued multiple defendants for alleged negligence arising from an automobile accident. Dames & Moore first appeared as a defendant in 1995 when Graef amended the complaint. In 1996, Judge Ficarrotta granted summary judgment in Dames & Moore's favor in an order that was reversed in part and remanded. Graef v. Hegedus, 698 So.2d 655 (Fla. 2d DCA 1997). Later, Judge Bonanno entered the summary judgment of June 9, 1999, the judgment of June 6, 2000, and the nonfinal order on Dames & Moore's entitlement to attorney's fees pursuant to section 57.105(1). Following Judge Bonanno's retirement, Judge Little entered the final judgment granting section 57.105(1) attorney's fees to Dames & Moore, which is the subject of this appeal.